## United States Building and Loan Association *versus* Silverman.

A stockholder of a building association incorporated under the provisions of the Act of 12th of April 1859, gave the required notice of his intention to withdraw from said association. The association failing to refund the money he had put in, he brought suit therefor. It was provided in the Act that at no time should more than one-half of the funds in the treasury of the corporation be applied to the demands of withdrawing stockholders. In an affidavit of defence the association averred that fifty per cent. of its funds had already been so applied, and that owing to the depreciation of real estate it had sustained heavy losses and incurred debts which should be paid before stockholders were permitted to withdraw. *Held*, that the withdrawing stockholder was not estopped by the proviso from legal process for the recovery of his money, until the treasury had funds sufficient to meet his claim. *Held*, *further*, that said affidavit was insufficient, inasmuch as it did not aver that the losses and debt were incurred before plaintiff's withdrawal.

November 5th 1877. Before Agnew, C. J., Sharswood, Mercur, Gordon, Woodward and Sterrett, JJ. Paxson, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1877, No. 13.

Assumpsit by Henry Silverman, against the United States Building and Loan Association of Pittsburgh. About the 10th of September 1872, Silverman subscribed for sixteen shares of the defendant association. He paid his dues regularly, and on the 6th of April 1875, had paid in upon his stock the sum of $640, being $40 per share. He was not at this time in arrears for any dues, owed no fines, and had borrowed no money. On that day he gave notice to the association of his intention to withdraw, in accordance with the provisions of the Act of April 12th 1859, Purd. Dig. 183, under which the association was incorporated, among which were these : "Every share of stock shall be subject to a lien for

[U. S. Building and Loan Association *v.* Silverman.]

the payment of unpaid instalments, and other charges incurred thereon, under the provisions of the charter and by-laws, and the by-laws may prescribe the form and manner of enforcing such lien. * * * And any stockholder wishing to withdraw from the said corporation, shall have power to do so, by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, and such proportion of the profits as the by-laws may determine, less all fines and other charges. *Provided,* That at no time shall more than one-half of the funds in the treasury of the corporation be applicable to the demands of withdrawing stockholders, without the consent of the board of directors."

The by-law of the association, as set forth in the affidavit of claim, and under which the defendant in error gave notice of withdrawal, is drawn expressly under the provisions of the act, and is as follows :—

"Any stockholder may withdraw from the association thirty days after having given written notice, at a regular meeting, of his or her intention so to do ; and shall be entitled to receive all instalments that have been paid in by him or her, together with five per cent. of the profits thereon, less initiation fee, any fines that may be due, and his or her proportionate share of any losses that may have been sustained by the association."

Plaintiff failing to receive the money due him, in 1876 brought this suit.

The association filed an affidavit of defence, which set forth that this was not the proper form of action, but it should be in the form of a bill in equity ; that a by-law of the association provided that, "at no time shall more than one-half of the money in the treasury be applicable to the demand of withdrawing stockholders, unless by a two-third vote of the board of managers ;" that no order of the board has been made ; that fifty per cent. has been applied and paid to the withdrawing stockholders, in the order in which they gave notice, and plaintiff has not been reached ; that the provision of the by-laws is that there should be deducted from the amount paid in by plaintiff, his proportionate share of the losses sustained by the association ; that the association, by reason of depreciation in real estate and securities, has sustained heavy losses, which losses are estimated to be at least $46,702.14, and may be much more, and would doubtless be more, if the property was forced on the market and sold for cash, and that it is impossible to ascertain such losses until the property is sold; that the association has incurred an indebtedness for land purchased, and there is a balance due thereon of $13,700, with interest from August 1st 1875, and that such debt should be paid before stockholders are permitted to withdraw.

A rule for judgment, for want of a sufficient affidavit of defence,

[U. S. Building and Loan Association *v.* Silverman.]

was taken by plaintiff, and the court entered judgment for him for the full amount of his claim. This entry was the error assigned.

*J. H. White* and *James S. Young*, for plaintiff in error.

*A. M. Brown* and *John S. Lambie*, for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, November 12th 1877.

Had the affidavit of defence filed in this case set forth losses incurred by the association, whether resulting from the depreciation of its property or otherwise, occurring before the time of the plaintiff's withdrawal, no doubt a proper set-off to the claim in suit would have been exhibited; herein, however, is the material defect in that it does not state that such losses did happen before the withdrawal. On trial, without such showing, the defence would clearly amount to nothing, for the plaintiff could not be charged with losses which occurred after he ceased to be a member of the company, and we must take it for granted that what a defendant cannot state in his affidavit of defence he cannot prove in court. A like defect is found in the allegation concerning the indebtedness of the company contracted in the purchase of lands, for neither is it stated when that indebtedness arose nor for what purpose the lands were bought. Then, with regard to the statement that there was no money in the treasury to meet the plaintiff's claim, this also is open to the objection that is, at best, only inferentially that we can learn that this deficit occurred before Silverman withdrew. It is said that the board of managers never authorized the appropriation of more than fifty per cent. of the money in the treasury, to the payment of withdrawing stockholders, and that the full amount required by the statute had been applied to the liquidation of the claims of such stockholders, in the order of their withdrawal, and the plaintiff had not been reached. We may infer, from all this, that, at the time Silverman withdrew there was no money in the treasury which could properly be appropriated to the liquidation of his claim either in whole or in part. But why could not this have been positively stated and thus have prevented the necessity of mere inference? Giving, however, this part of the affidavit the full force of a positive statement, is it a good defence made out? We think not. The Act of April 12th 1849, Pamph. L. 544, provides: " That any stockholder wishing to withdraw from the said corporation, shall have power to do so, by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, and such proportion of the profits as the by-laws may determine, less all fines and other charges; Provided, that at no time shall more than one-half of the funds in the trea-

[U. S. Building and Loan Association *v*. Silverman.]

sury of the corporation be applied to the demands of withdrawing stockholders without the consent of the board or directors."

It will be seen from the above, that after thirty days' notice the membership of the stockholder is determined, and he becomes a creditor of the corporation to the amount he has paid, less fines and charges. That he may, upon the refusal of the company to pay him, sue it, and recover judgment, just as any other creditor, is not doubtful. It is urged, however, that he is estopped by the proviso, from legal process, for the recovery of his money, until the treasury has funds sufficient to meet his claim. If this be the true interpretation of the statute, then is this creditor in a most unfortunate position; for the corporation may never choose to make the necessary provision for such purpose, and therefore he can never have process to compel it so to do.

It is a fact now alleged that this company has no money to apply to the claim in suit. When will it have? in one, six or ten years, or ever? And will the Statute of Limitations be suspended in the meantime? To these questions the defendant but answers : the proviso interposes to prevent the plaintiff from all compulsory process, though his claim is recognised, in the body of the statute, as just and proper, as long as the corporation manages to maintain an empty treasury, or, what is the same thing, as long as prior drafts leave no money to be applied to his debt.

Looking at the statute as a whole, we are not prepared to adopt an interpretation so contrary to its spirit and the plain dictates of justice. Whilst it is certainly intended that the operations of the corporation shall not be embarrassed by having the whole amount of its cash assets taken, in order at once to pay withdrawing stockholders, yet it as certainly does not intend that no provision shall be made for their payment, and that they may be indefinitely postponed, even from judgment, by a plea of quasi insolvency.

We think the design of the act can be better met by giving the plaintiff judgment, and then, should it seem equitable to the court below, it may restrain execution, in order that the defendant may have a reasonable time within which to raise the money for the payment of such judgment, so that there may be no undue derangement of its affairs.

Judgment affirmed.