## APPEAL OF THOMAS CALLAHAN ET AL.

[C. T. Quin, Assignee, v. Thomas Callahan et al.]

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILADEL-
PHIA COUNTY.

Argued January 23, 1889—Decided February 4, 1889.

1 If, upon information fraudulently furnished by the secretary of a build-
ing and loan association, that its shares of stock have matured when
they have not, the board of directors improvidently enter satisfaction
upon the mortgage of a member and borrower, the satisfaction will be
stricken off upon a bill filed by an assignee of the association for the
benefit of creditors.

2. There is no virtue in the satisfaction of a mortgage that will prevent
either a fraud or mistake therein from being corrected, except, perhaps,
as to purchasers or other mortgagees without notice; moreover, aside
from the rights of creditors, the equities between the members of such
an association will not allow one of them to escape his share of the
common burdens under a mistaken satisfaction of his mortgage as a
borrower.

Before Paxson, C. J., Sterrett, Green, Clark, Wil-
liams, McCollum and Mitchell, JJ.

No. 179 July Term 1888, Sup. Ct.; court below, No. 167
March Term 1886, C. P. No. 4.

On March 3, 1886, Charles T. Quin, assignee for the benefit
of creditors of the Commodore Barry Building & Loan Associ-
ation, filed a bill in equity against (as amended) Thomas Cal-
lahan and George G. Pierie, recorder of deeds, the prayers of
which bill were, upon the facts therein averred, that the satis-
faction of a certain mortgage executed and delivered to said
association by said Thomas Callahan, be stricken off and
declared null and void; that an account be stated between said
association and said Callahan, and that he be ordered and
decreed to pay to the plaintiff whatever might be found due by
him to the association, and for other relief. An answer having
been filed, and issue, the cause was referred to *Mr. G. W.
Bryant*, as examiner and master.

By the report of the master, filed on January 25, 1888, the following facts were found:

1. That the Commodore Barry Building and Loan Association was duly incorporated July 25, 1874, under the laws of this commonwealth, and carried on business as such until September 8, 1885, when, pursuant to a resolution of that date adopted by the association, the plaintiff was duly appointed assignee of the association, for the benefit of its creditors and as such had duly qualified.

2. That John J. Nolan was secretary of the association from its commencement in 1874 to the early part of May, 1885, when it was discovered he had embezzled about $20,000 belonging to the association; that he commenced appropriating the funds of the association to his own use in 1876, and continued to do so up to the time of his flight in May, 1885, upon an average of about $2,000 a year, for ten years prior to March, 1885, and $200 subsequent to that date.

3. That the defendant was a stockholder and director of the association from its organization until March 3, 1885, and the owner of ten shares of stock of the first series; that he borrowed on his said ten shares of stock, and received a loan thereon from the association of two thousand dollars less premium, and gave the association a mortgage for that amount dated December 1, 1882, which was recorded; that the amount actually received by the defendant, deducting premium, was $1,934.

4. That these ten shares of stock were issued to defendant in 1874, and the instalments due thereon were regularly paid when due at the rate of ten dollars per month, for the space of ten years and nine months, and he also paid ten dollars per month for two years and four months for interest on said mortgage.

5. That the books of the association were not properly kept by said Nolan, being full of errors, and not reliable; that the reports of the auditing committees were as erroneous as the books of the association, and not reliable.

6. That the minute book of the association under date of March 3, 1885, showed that a meeting of the board of directors, eleven members being present, was held at St. Augustine's Hall, Crown street below Vine, and that the following resolution was presented:

"Resolved, that the solicitor be instructed to enter satisfaction upon the bonds and mortgages of this association of the first series that are now matured, upon the secretary certifying that the same are paid by the maturing of the stock of the first series."

7. That the resolution was not only presented but passed by a bare quorum of directors; that two of said eleven directors were not present and four who voted for the same were borrowers on stock of the first series; that the resolution was verbally presented by the defendant who voted for the same; that the directors (except Nolan), who voted for the resolution, did so in the mistaken belief that the stock of the first series was about maturing and was worth two hundred dollars per share; that the stock of the first series on June 30, 1885, was only worth eighty-seven dollars and forty-seven cents.

8. That at the time this resolution was passed the stock of the first series had not matured; that the association then was and had been for a long time prior thereto insolvent; the directors and stockholders were then ignorant of the great loss of the association, having no knowledge whatever of the fact of Nolan's embezzlement; that the resolution above set forth was the only resolution which was passed by the directors or the association on March 3, 1885.

9. That Nolan, knowing the stock in the first series had not matured and was not worth two hundred dollars per share, with fraudulent intent furnished the attorney-in-fact of the association with a resolution purporting to have been passed by the association which was not passed; that it was not a copy of the resolution which was passed on March 3, 1885. This pretended copy of the resolution, was as follows:

"At a stated meeting of the Commodore Barry Building and Loan Association, held March 3, 1885, it was on motion resolved that Wm. L. Marshall, Esq., attorney-in-fact for this association (Vide Letter of Attorney Book No. 54, page 385), be and is requested to acknowledge satisfaction of a certain mortgage given by Thomas Callahan in the sum of two thousand dollars, bearing date December 1, 1882, and recorded at Philadelphia in Mortgage Book J. O. D., No. 68, page 396, etc., and to enter satisfaction on the margin of said record.

"Extract from minutes.

[Association Seal.]    Attest, John J. Nolan, secretary."

10. That Mr. Marshall, relying upon said certificate, in total ignorance of the real facts, entered satisfaction of defendant's mortgage and the same was delivered to him marked "satisfied" by Nolan, together with the bond and policy of insurance accompanying the same. That defendant had not made any ·payment on account of said stock or mortgage since March 3, 1885.

Upon the foregoing facts, the master, citing Story's Eq. J., §§ 140, 142; Bispham's Eq., § 190; Fleming v. Parry, 24 Pa. 47 ; Lancaster v. Smith, 67 Pa. 427 ; Russell v. Church, 65 Pa. 9; West's App., 88 Pa. 341, and Strohen v. Franklin etc. Association, 115 Pa. 273, reported his conclusions of law to be : (1) That the plaintiff was entitled to equitable relief; (2) that the entry of satisfaction of defendant's mortgage to the association should be stricken off, on the ground that it was satisfied in the mistaken belief that the stock of the first series had matured, and in total ignorance of the fact that the association was then insolvent.

The master then stated an account, finding that there was due from Thomas Callahan upon the indebtedness secured by his bond and mortgage, the sum of $2,272.88, and recommended a decree that the recorder of deeds strike off the entry of satisfaction upon the mortgage, and that Thomas Callahan deliver up the bond and mortgage to the plaintiff and pay to him the said sum of $2,272.88, and the costs.


To said report, Thomas Callahan filed various exceptions, alleging that the master erred, inter alia :

4. Because he found as a matter of law that the plaintiff was entitled to equitable relief.

5. Because he found as a matter of law that the defendant being a director of the association could not avail himself of the principles governing the relation of debtor and creditor, although fraud was neither alleged nor proved.

6. Because he omitted to find as a matter of law, that the mistaken belief in the value of the association's stock induced by the negligence of the association itself was not relievable against in equity as against a stockholder who in good faith had severed his connection with the association.

7. Because he did not find as a matter of law that the association was responsible for the negligence of its auditors, whose failure to properly perform their duty in examining the association's accounts enabled the secretary to embezzle the funds of the association which resulted in its insolvency.

After argument, the court, ARNOLD, J., without opinion filed, dismissed all the exceptions to the report, and entered the decree recommended by the master. Thereupon the exceptant took this appeal, assigning as error, specifically, the overruling of his exceptions and the making of said decree.

*Mr. John G. Johnson* (with him *Mr. John A. Ward* and *Mr. T. M. Daly*), for the appellant:

1. It is submitted that as between the defendant and the association, the relation of debtor and creditor existed as to his loan and its payment: Miller v. Building Ass'n, 50 Pa. 32. The defendant having paid his loan by stock at a valuation agreed upon between him and the society, the elementary principle is that satisfaction once agreed upon between the parties, when performed, is a bar to all actions of account upon the matter : Miller v. Building Ass'n, supra ; 2 Parsons on Contracts, 193. The borrower having in good faith severed his connection with the society, he cannot be brought back to contribute his share of losses undiscovered when he withdrew: Miller v. Building Ass'n, supra ; Booz's App., 109 Pa. 592. West's App., 88 Pa. 341, is not in conflict with this position.

2. Fraud cannot be presumed; there must be facts in support of so serious a charge. If the defendant as a director is to be charged with greater liability than other stockholders, it should flow from either carelessness or fraud in the performance of his duties. His responsibility is clearly defined in Endlich on Building Associations, § 209. Directors can be regarded only as mandatories ; persons who have gratuitously undertaken to perform certain duties, and who are therefore bound to apply ordinary skill and diligence, and no more : Spering's App., 71 Pa. 21 ; Watts's App., 78 Pa. 370.

3. It is further submitted that the doctrine of mistake in equity, does not apply. A mistake of facts consists in the belief of the present existence of a thing material to the transaction which does not exist, or in the past existence of a thing

which has not existed. All the cases upon this subject clearly show that the absence of something material to the transaction was the foundation of equitable belief; the mistake was of a thing, not an error of judgment, more particularly where the means of information were equally accessible to both parties, and there was no misrepresentation: Story's Eq. J., 161; Markle v. Hatfield, 2 Johns. 459; Whitbeck v. Van Ness, 11 Johns. 414; Knight v. Majoribanks, 11 Beav. 322; Dortic v. Dugas, 55 Ga. 496.

4. Moreover, a mistake will not be relieved against if it is the result of a party's own negligence: Bispham's Eq., 247; or where the means of inquiry are equally open to both parties: Kerr on Frauds, 407, n.; Daniel v. Mitchell, 1 Story, 172; Hagerty v. McCann, 25 N. J. Eq. 48.

*Mr. Edward C. Quin,* for the appellee:

The facts found by the master must be taken as true. Not a word of the testimony having been printed, the only question for this court to decide is, whether or not the master has properly applied the law. Besides, there is no power to set aside the findings of a master upon the facts, unless the evidence from which he deduces them is so inconclusive as to warrant the setting aside of a verdict if found on such evidence in a trial at common law: McCay v. Black, 14 Phila. 635; Hottenstein's App., 2 Gr. 301; Harris' App., 2 Gr. 304; Speakman's App., 71 Pa. 25; Thompson's App., 107 Pa. 559.

1. The general rule is that an act done or a contract made under a mistake or in ignorance of a material fact is voidable and relievable in equity: Story's Eq. J., §§ 140, 142; Hore v. Becker, 12 Sim. 465. Mistake may consist either in the circumstance that the instrument by which the parties designed to express their intention, does not express it, or in the circumstance that the intention of the parties, though correctly expressed, has nevertheless been reached through some misapprehension or ignorance: Bispham's Eq., 4th ed., § 190; Hurd v. Hall, 12 Wis. 112; Adams' Equity, 385; Leek v. Cowley, 10 S. & R. 176; Horbach v. Gray, 8 W. 492; Bishop v. Reed, 3 W. & S. 261; Russell v. First P. Church, 65 Pa. 9.

2. Equity will grant relief where under a mistake an instrument is given up in the belief that the money was received:

Adams' Eq., 398. West's App., 88 Pa. 341, has in it every element contained in the present case. On the same subject see Pratt v. Eby, 67 Pa. 396; Saurman v. Binder, 43 Pa. 209; Heath v. Page, 48 Pa. 130; Fleming v. Parry, 24 Pa. 47; Eyre v. Burmester, 10 H. L. 90; Quein v. Smith, 108 Pa. 325; Strohen v. Saving and Loan Ass'n, 115 Pa. 273; Endlich on Building Associations, §§ 211, 487; Kisterbock's App., 51 Pa. 486.

OPINION, MR. CHIEF JUSTICE PAXSON:

At the time the plaintiff's mortgage was satisfied the stock of the first series had not matured. I do not understand this to be disputed. It is true, the secretary on March 3, 1885, reported to the board of directors that it had matured, and it is probable they believed him, and passed the resolution authorizing the satisfaction of the appellant's mortgage in entire good faith. It subsequently appeared that the secretary was a rogue, and had been systematically robbing the company for years; that in consequence thereof, the stock, instead of being worth two hundred dollars per share, was not worth half that sum. The appellant, Callahan, was not only a member or stockholder of this building association; he was a borrower, as his mortgage shows, and he was also one of the directors; he was present when the secretary made his report, and voted on the resolution to satisfy his own mortgage. If we concede that he acted in good faith, and was himself deceived by the secretary, I am unable to see how it can change his position. Bad faith might perhaps make his position worse than it is, but I fail to see how good faith could make it any better. We must consider the case as it affects an insolvent corporation. The appellant was entitled to have his mortgage satisfied whenever the stock had matured, that is, whenever it was worth two hundred dollars per share. Is it material to the rights of other members of this insolvent association whether the premature satisfaction was the result of a fraud, or of an innocent mistake?

There is no virtue in the satisfaction of a mortgage, except, perhaps, as to purchasers or other mortgagees without notice, that prevents either a fraud or mistake in the satisfaction from being corrected. The appellant cannot complain of the cor-

rection of a mistake which lifted the whole burden of this fraud from himself and placed it upon the shoulders of his at least equally innocent co-members. He has the less occasion to complain from the fact that he was a director of the association, and as such had certainly a duty to perform in the way of looking after its affairs, and protecting the interests of other members. The satisfaction of his mortgage, if allowed to stand, would give him an advantage over other stockholders and borrowers to which he is not entitled. It was held in West's App., 88 Pa. 341, that where the entry of satisfaction of a mortgage is shown to have been entered by mistake, it is not conclusive as between the parties to the transaction; in Quein v. Smith, 108 Pa. 325, that an officer of a building association who knows that it is insolvent cannot discharge his indebtedness to it with stock held by him; and, in Strohen v. Franklin Saving and Loan Association, 115 Pa. 273, that the insolvency of a building association puts an end to its operations as such association, and nothing remains but to wind it up in such a manner as to do equity to the creditors and between the members themselves. Aside from the rights of creditors, the equities between the members of this association will not allow the appellant to escape his share of the common burdens, by shielding himself behind this improvident satisfaction of his mortgage. The court below was right in ordering it to be stricken off.

> Decree affirmed, and the appeal dismissed at the costs of the appellant.