Sperling *v.* Euclid B. & L. Association, Appellant.

Argued May 10, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Barnet Lieberman,* with him *Herman D. Levinson,* for appellant.—The rule for amount admitted to be due should have been dismissed: Criswell's App., 100 Pa. 488; Brown v. B. & L. Assn., 302 Pa. 254.

A building and loan association differs from ordinary corporations, and stockholders therein are really partners in the enterprise: Christian's App., 102 Pa. 184; Brown v. Victor Building and Loan Association, 302 Pa. 254.

*Leon E. Sperling* and *Abraham L. Freedman,* for appellees, were not heard.

OPINION BY MR. JUSTICE SIMPSON, June 30, 1932:

In their bill in equity in this case, plaintiffs aver that they were the owners of twenty-five shares of stock in one of the series of the Euclid Building and Loan Association, defendant, upon which they had borrowed $1,600; that payments had been regularly made on said shares until March, 1930, at which time they were worth $200 each, and defendant, by resolution duly passed, had formally declared all the shares in this series matured; that, by reason thereof, plaintiffs became entitled to receive the sum of $3,400, being the par value of these shares less the loans thereon, but defendant, though solvent, had continuously refused to pay that sum or any part thereof, during the period of nearly two years which had elapsed since the maturity was declared.

The answer admitted the solvency of defendant and the fact that the stock had been declared matured, "with the qualification that [this was] upon the condition that payments were to be made at the discretion of the board of directors;" but it was not stated that this qualifica-

tion was a part of the resolution declaring the maturity, or was officially adopted then or at any other time. It was further averred that, at the time the resolution declaring the maturity was adopted, defendant association owed to a trust company $33,000 for money borrowed, upon which it was applying "part of the monthly receipts," the balance being used for "the maintenance of real estate" owned by defendant; but whether all of the cash received from that and other sources, with the exception specified, had been so applied, when the real estate was acquired, and what amount was still due the lender, were not stated. It further averred that it "has been notified by the department of banking that no money should be paid out to any stockholder," but how, when or in what way it was notified was not averred; that, at the time maturity was declared, it was also and still is "liable for the payment of $6,255 to withdrawing stockholders;" "that to the date of filing this answer, the monthly receipts have not been sufficient to pay [the lender and the withdrawing stockholders], and [defendant] does not have on hand in its treasury sufficient funds to meet the plaintiffs' demands;" but no definite amounts are named as to any of these matters, nor does it allege that it cannot readily obtain money to meet plaintiffs' claim. The answer also avers that the lender is entitled to priority of payment; that the entry of judgment in favor of plaintiffs and the issuance of execution "will have a tendency to cause [defendant's] insolvency;" that "since the declaration of said maturity [defendant] has suffered considerable losses which may render the association insolvent; that solvency or insolvency......can better be determined at the time the balance [of the borrowed money] has been repaid and a further appraisal of the assets of [defendant] made;" and that plaintiffs are not entitled to interest "until such prior claims are paid."

Plaintiffs thereupon entered a rule on defendant "for a decree for the amount admitted to be due on hearing

on bill and answer," which the court below made absolute for the $3,400 with interest. Upon this appeal by defendant, no procedural question is raised, but only whether or not such a state of facts is set forth as to disentitle plaintiffs to the decree.

As we have pointed out, the answer does not state any resolution by defendant's board of directors, or any definite facts affecting the propriety of its action in declaring the maturity of plaintiffs' stock, but only general statements regarding the pleader's belief as to what may happen if plaintiffs are given a decree and issue execution thereon. While, under other circumstances, the statements regarding defendant's financial condition might be deemed an acknowledgment by it of insolvency (Stone v. Schiller B. & L. Assn., 302 Pa. 544, 552; Endlich on Building Associations, 2d edition, section 511), this cannot be so here, since the answer admits defendant's solvency and only avers that if a decree in favor of plaintiffs is entered and execution issued thereon, it will have a "tendency" to cause insolvency. This is not sufficient to establish error in the decree appealed from (United States Building & Loan Assn., v. Silverman, 85 Pa. 394; Stone v. Schiller Building & Loan Assn., supra; McGovern v. Cosmopolitan Savings & Loan Assn., 44 Pa. Superior Ct. 212, by RICE, P. J.); which is subject, however, to the power of the court of equity, in which this proceeding is pending, to control the execution so as to do justice to all the stockholders in the defendant association, who are or were, in essence, partners in a common enterprise: Christian's App., 102 Pa. 184; Laurel Run Building Assn., v. Sperring, 106 Pa. 334; Strohen v. Franklin Saving Fund & Loan Assn., 115 Pa. 273; Brown v. Victor Building Assn., 302 Pa. 254; Stone v. Schiller Building & Loan Assn., 302 Pa. 544.

If insolvency in fact existed when plaintiffs' shares were declared matured, this may still be shown by a proceeding in equity (Callahan's App., 124 Pa. 138; Chris-

148

tian's App., supra) ; so, also, upon clear proof of a mistake or fraud resulting in an untimely declaration of maturity, relief will be given against the effect thereof, though defendant was not insolvent at that time: Kurtz v. Bubeck, 39 Pa. Superior Ct. 370. Similarly, if insolvency should follow, or if there is a strong probability that it would result from an immediate attempt to enforce the decree, defendant, acting alone or by or through the department of banking, as the exigency of the case may require, can obtain temporary relief in this litigation (as, under like circumstances, other corporations do), although only embarrassed, upon showing that its assets, if properly conserved, will in all likelihood be sufficient to meet all or most of its obligations, and hence should not be sacrificed to the injury of many if not all of the parties interested therein. This familiar exercise of equitable jurisdiction would seem to be even more appropriately applied to judgments and executions in favor of matured, withdrawing and other stockholders in this kind of corporation, all of whom are or were, in essence,—as we have already pointed out,—partners in the common enterprise, than in the case of others of a purely business character.

On the question of interest no difficulty arises. If the stock was properly declared matured, plaintiffs' claim was presently payable. No statute requires, as is provided in the case of withdrawing stockholders, that the holder of matured stock must wait until, in due course, the usual payments by continuing shareholders will have accumulated a sufficient sum to pay the amount due. Probably this was because a building association always knows when its series will mature, and can make arrangements to meet the necessary payments before the maturity is declared; whereas it cannot know, until actually notified by the stockholder, when he will wish to withdraw. Whatever the reason, however, when stock actually matures, the rights of the owner thereof are fixed as of that date; he does not share in future profits

or losses, and is entitled, as of that date, to receive its par value. Hence a debt is then presently created and from that time on, interest will continue to run, until and unless it is admitted of record or decreed that he was not entitled to the par value of his shares at the time their maturity was declared.

We have considered this appeal at so great length because we recognize as still existing the difficult position of building associations, so graphically described in Brown v. Victor Building Assn., supra; and also because of the fact, too often minimized or entirely overlooked, that, in cases of actual insolvency, the holders of stock declared to have matured, are not creditors in the ordinary sense, but are only entitled to share pro rata with the holders of unmatured stock, after the payment of what may be termed outside creditors (Criswell's App., 100 Pa. 488), provided, of course, that the losses which caused the insolvency did not arise after plaintiffs' shares matured: United States Building & Loan Assn. v. Silverman, supra. In that respect, building associations are in a class by themselves, and, because of this, the law deals with them, in some particulars, in a way essentially different from its treatment of most other corporations: see Stone v. Schiller B. & L. Assn., supra.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant, with leave to the court below, if a valid reason for equitable intervention is shown to exist, to restrain execution until such time as the money borrowed by defendant before the declaration of maturity of plaintiffs' shares, has been or should be fully paid, and so that defendant's assets and collections, if properly managed, shall not be unnecessarily sacrificed, for plaintiffs' benefit, to the injury of the other creditors and shareholders of defendant, who were such at the time plaintiffs' shares matured.