## Comet Building & Loan Association's Petition

*Alexander Fried,* for petitioner.

*Lester L. Dolfman, George J. Edwards, Jr., Fred'k R. Reeves* and *Charles I. Cronin,* contra.

MacNeille, J., June 10, 1935.—The Comet Building and Loan Association asked for a reduction of its liability to shareholders to 55 percent of the amount paid as dues prior to February 15, 1935.

Exceptant, John H. Gardner, had 10 shares in the twenty-ninth series which matured January 15, 1932, having a value at that time of $2,000, which was not paid in cash at maturity, but the association issued to him certificate no. 5 in lieu of the full paid stock and has since paid on account thereof $100 on November 18, 1932, in June 1933, in August 1933, and in November 1933. The certificate issued declares the shares to have fully matured on January 15, 1932, at the value of $200 per share, and recites that for valuable consideration the holder of the certificate agrees to accept in lieu of the full payment on the maturity date and the building association agrees to pay instalments on account as may from time to time be determined by the directors pro rata with all other shareholders in that series. The association further agrees to pay out of its earnings cash dividends of 5 percent per annum on the unpaid balance due said holder in lieu of interest.

Another exception has been filed on behalf of Walter

C. Baus, who was the owner of nine shares of the twenty-ninth series which was declared matured by the Board of Directors on January 15, 1932. He refused to accept a similar certificate to that assigned to Gardner.

Another exceptant was Frank Kuenzer, holder of certificate no. 34 for five shares fully matured in series 29, for which a certificate was issued on January 15, 1932, and upon which certain payments have been made.

Another exceptant is George D. Cox, holder of two certificates of full paid stock, one for 10 shares of the cash value of $500, now reduced to $400 by payments on account, and another certificate of two and one-half shares with the full value of $500, now reduced to $400 by payments of four instalments on account, which certificate was issued on January 15, 1932.

To sustain the exceptions of the matured stockholders it would not only be necessary to decide that section 621 of the Building and Loan Code of May 5, 1933, P. L. 457, is not applicable to those stockholders, but that the association was solvent when the maturity was declared, and that none of the losses occurred before the maturity was declared; that it was declared without mistake or fraud, etc.—all questions which we cannot pass upon in this proceeding: Sperling v. Euclid B. & L. Assn., 308 Pa. 143; Sklar v. Maxwell B. & L. Assn., 107 Pa. Superior Ct. 305; Wertheimer, to use, v. Morris Haber B. & L. Assn., 113 Pa. Superior Ct. 42.

While the maturity was declared 3 years ago, and some payments were made on account, yet a depreciation in assets of 45 percent did not occur overnight.

Solvency or insolvency is not a matter of bookkeeping but sound business judgment: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544. The decree, as submitted, does not mention matured stockholders by name but is drawn in the language of the act, and it is entered without prejudice to the rights of each of the matured stockholders to have his rights as to all these matters adjudi-

cated at one time in some appropriate action at a future time. Undoubtedly a decision of our appellate courts will before long settle the conflicting interpretations placed on section 621 by our lower courts.

It is obvious that at a time when the banking department has declared its avowed intention of liquidating all insolvent building and loan associations, it is of real importance for all the stockholders, including those who filed exceptions, to have the decree submitted signed without any unnecessary delay, so as to save the association, temporarily at least, from being liquidated.

Exceptant John H. Gardner is also the holder of 10 shares of stock of the thirty-first series, having paid in value of $1,690, for which written notice of withdrawal was given on February 15, 1935. The undenied allegations in the petition presented in this case, indicate that this was only a few days before February 28th when an accounting showed that there was an impairment of capital of 45 percent, and it is therefore obvious that the notice was not given until the association was hopelessly insolvent and the notice was therefore ineffectual to change his status: Stone v. Schiller B. & L. Assn. et al., 302 Pa. 544.

As he was the only withdrawing stockholder to appear in opposition to the decree, we assume that the other withdrawing stockholders had no objection to the form of decree submitted which specifically includes the withdrawing stockholders.

All of the exceptions are dismissed without prejudice to the rights of the matured shareholders to further proceedings.