Griffith, Appellant, *v.* Daylight Savings Building and Loan Association.

Argued October 9, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Harold D. Saylor,* of *Strong, Saylor & Ferguson,* for appellant.

*William S. Peace,* for appellee, filed no brief and made no argument.

OPINION BY BALDRIGE, J., December 11, 1940:

A stockholder in the defendant building and loan association, which is in the course of voluntary liquidation, filed a bill in equity to compel the association to convey real estate to him in exchange for his unencumbered matured stock. An answer was filed thereto admitting the facts averred in the bill and asking for a judicial determination of the rights of the respective parties. The chancellor dismissed the bill and the exceptions filed to his decree were overruled by the court below. Hence this appeal.

The assets of the association, which included mortgage loans, a large amount of encumbered real estate, delinquent dues, etc., amount to a total of $382,424.84, with liabilities of $344,486.42. On or about March 8, 1939, the board passed a resolution that certain restrictions upon the activities of the association be enforced, paving the way for an informal voluntary liquidation.

By reason of its extensive holdings of real estate the association adopted a plan for decreasing its liabilities by conveying to a stockholder, when requested, real estate in exchange for his stock. In every such case the stockholders' matured or withdrawn stock had a value equal, at least, to the value at which the real estate was carried on the association's books. The surrendered stock was then cancelled and the outstanding obligation of the association accordingly reduced. An examiner of the Banking Department in his report made June 16, 1938, approved this plan. The defendant association, however, has recently ceased this practice, as the Department of Banking did not approve thereof, despite its examiner's recommendation.

The value of the plaintiff's matured stock amounts to $2,326. He asked the association to convey to him real estate in cancellation of his stock at the book value of such real estate or at the actual value thereof, whichever amount was the higher. This request was refused and this action followed.

There is no provision in the law that expressly prohibits a building and loan association from following the procedure heretofore adopted by the defendant in reducing its stock liability, but, on the other hand, there is no law that compels an association to do so. While there may be some advantages to the shareholders in being relieved of any obligations which accrue by reason of the association's holding real estate and such a course would no doubt serve to facilitate defendant's liquidation, due regard must be given to the interests of the shareholders of a building and loan association,

as they have an equal status in the winding up of the affairs of an association. No shareholder should be permitted to obtain advantage over others occupying the same relationship: *Sharps v. Homer Building and Loan Association,* 111 Pa. Superior Ct. 556, 170 A. 353; *Rosenblatt et al. v. Potential Building & Loan Association,* 110 Pa. Superior Ct. 466, 169 A. 24; *Stone v. New Schiller Building and Loan Association et al.,* 302 Pa. 544, 153 A. 758.

Equity demands that shareholders in an association be treated with equality. When a plan of distribution of the assets will result in a preference to some it cannot be enforced unless it has received the affirmative consent of all shareholders. Under the scheme advanced by appellant, in view of the character of the assets of the association and the depressed condition of the real estate market, there is no assurance of a fair and equal pro rata distribution to the shareholders. Some, especially those having small holdings, may not wish or be able to become owners of real estate. The assets are not of a character that may be apportioned in kind to the shareholders according to their interest. Moreover, the real estate not exchanged may have to be sold at a great sacrifice, which would be prejudicial to those to whom real estate was not conveyed.

The chancellor very aptly states: "But however attractive such a proposal may appear as a means of facilitating final liquidation and dissolution of defendant association, this court, in the absence of the consent of all shareholders, cannot lend its support to a method of distribution which violates the fundamental rule that any distribution in liquidation, in the absence of an express agreement by all shareholders to the contrary, must be pro rata as to amount and equal in time."

In *Craycraft et al. v. National Building & Loan Association,* 117 Ky. 229, 77 S. W. 923, the same problem as before us was under consideration in the Court of Appeals in Kentucky. It was there held that the dis-

tribution of actual real estate among the assets could not be made in kind without the consent of all the shareholders entitled to a distribution. The court there said (p. 925): "...... it may be, and probably is, that among the non consenting or dissenting stockholders there are some who hold but a few shares—possibly some who hold only a single share—of stock. It is not likely that any of them would be able to find a piece of real estate on the list of the same value as his share or shares. He may not be able or willing to invest money in addition in the real estate offered, and especially at the price offered ...... It is not true, strictly, that every stockholder has an equal chance in the proposed plan, even if an even chance in anything except money would satisfy his right ...... Some of these shares must necessarily fail to participate in this partition of the real estate, and therefore be compelled to take whatever chance there may be in realizing an equivalent sum, proportionately, from the other assets of the company."

The same situation is presented in this case. There is no assurance that each shareholder will receive a distribution of his share without a preference or priority to any other member of the same class.

The argument of the appellant, in support of his position that he is entitled to receive certain real estate, is based chiefly upon the fact that the plan of distribution is likely to be beneficial to both the association and its shareholders. If such be the case, the consent of all the shareholders to this method of liquidation should be readily available; otherwise, the principle that there shall be a fair and equal distribution is violated.

Decree of the court below is affirmed at appellant's costs.