### EASTLAND BUILDING & LOAN ASS'N v. WILLIAMSON.

### No. 1355.

Court of Civil Appeals of Texas. Eastland.

Dec. 7, 1934.

Rehearing Denied Jan. 4, 1935.

Turner, Seaberry & Springer, of Eastland, for appellant.

Grisham Bros., of Eastland, for appellee.

William H. Clark, Jr., of Dallas, amicus curiæ.

HICKMAN, Chief Justice.

Treating the certificate hereinafter copied as an unconditional promise to pay, appellee brought this suit thereon against appellant and was awarded judgment for the face amount thereof, plus certain past-due dividends or interest payments. The case was tried before the court without a jury, and is appealed upon the court's findings of fact and conclusions of law. No statement of facts accompanies the record. The certificate declared upon is as follows:

"Full Paid, Non-assessable Investment Stock
Shares $100 Each

"Eastland Building & Loan Association, of
Eastland, Texas.

"Number 504          Shares 10

"This is to certify that W. G. Williamson is the owner and holder of ten full paid, non-assessable shares of the Capital Stock of Eastland Building & Loan Association, Eastland, Texas, for each of which shares

said stockholder has paid the sum of One Hundred Dollars, in cash, to said Association.

"The holder of this stock is not entitled to participate in the profits of the Association, but shall be paid dividends upon One Hundred Dollars for each share represented by this Certificate, at the rate of eight percent per annum, payable semi-annually on the first days of January and July of each year, subject to the By-Laws.

"This Certificate may be surrendered for cancellation by the holder hereof, or called in for cancellation by the Association, at any time upon thirty days' notice thereof and in accordance to the By-Laws of this Association; and upon such cancellation, the holder hereof, shall receive from said Association, for each share cancelled, the sum of One Hundred Dollars, with dividends at the aforesaid rate to the date of cancellation, provided that no dividend whatever shall be paid if certificate is cancelled by the holder within six months from date hereof.

"In witness whereof, Eastland Building and Loan Association, of Eastland, Texas, has caused this Certificate to be signed by its President and Secretary, and its corporate seal affixed hereto at Eastland, Texas, this 5th day of August, A. D. 1927.

"Eastland Building & Loan Association

"(L.S.)

"[Signed.]  T. L. Overbey, President.

"[Signed.]  B. M. Collie, Secretary."

Indorsements:

"Certificate for ten shares investment stock of the Eastland Building and Loan Association, Eastland, Texas.

·"Issued to W. G. Williamson

"Dated   August 5th, 1927.

"For value received —— hereby sell, assign and transfer unto —— the shares of the Capital Stock represented by the within Certificate, and do hereby irrevocably constitute and appoint —— to transfer the said shares on the books of the within named Association, with full power of substitution in the premises.

"Dated ——

"————.

"Witness: ——.

"Cancellation Receipt

"Receive of Eastland Building & Loan Association, of Eastland, Texas, payment in full of all interest in the assets of said Association by virtue of this stock certificate.

"Dated —— 192—   ——.""

Briefly summarized the court made the following findings of fact: (a) Appellant is a building and loan association incorporated under the laws of the state of Texas, and on the date it issued the certificate to appellee it had adopted, and there were then in force and effect, certain by-laws, a copy of which was attached to the findings and made a part thereof; (b) the instrument above quoted, and the by-laws referred to, in so far as same are applicable, constitute the entire contract upon which the suit is based; (c) on January 11, 1934, there was due and unpaid on the certificate $1,000 as principal, and $130.27 as dividends or interest; (d) on February 28, 1933, appellee gave written notice to appellant of his intention to surrender the above certificate for cancellation, and on March 1st, thereafter, defendant made reply to this notice, stating, in substance, that the economic conditions were such as to keep it from paying appellee at that time, but that the application was being filed and the certificate would be retired in order. Upon the request of appellant these additional findings were made: (e) Since February 28, 1933, appellant has had no net receipts during any month and the current operating expenses have exceeded the cash receipts. Prior to February 28, 1933, three persons holding certificates similar to plaintiff's had filed applications for cancellation and payment, all of which applications are still pending and unsatisfied; (f) on February 28, 1933, appellant was indebted in the amount of $18,000 secured by mortgages on its assets, and which indebtedness is still unpaid; (g) appellant does not have on hand sufficient funds to pay the amount due appellee upon the certificate sued upon; (h) appellant has heretofore issued, and there are now outstanding, certificates and contracts identical with the one here in suit in the aggregate sum of $32,750, and the dividends or interest paid appellee "are similar to those paid other persons holding identical certificates or contracts"; (i) prior to February 28, 1933, appellant had issued to various persons certificates as per the following form, "This is to certify, that —— is the owner of —— shares of advance payment stock of the Eastland Building and Loan Association transferable only on the books of the Association in person or by attorney on surrender of this Certificate. Each share entitles the holder thereof to its proportion of the funds of the Association, subject to the provisions of the By-Laws and Pass Book No. ——," and had issued other certificates identical in form with the foregoing, except that in the

face of the certificate the words "shares of installment stock" appear instead of the words "shares of advance payment stock," and that prior to said date four persons holding certificates identical in form with those next above quoted had filed applications for cancellation, which applications were still pending and unsatisfied; (j) appellant does not have on hand sufficient funds in cash to pay the amounts due to the holders of the certificates tendered for cancellation and payment referred to in the next preceding paragraph; (k) since 1930 appellant has made no loans and since 1931 has sold no stock. It is only transacting the business of collecting unpaid prior contracts, the conversion into cash of its other assets, and the payment of its liabilities.

Upon these findings the court concluded, as a matter of law, that the "certificate or contract sued upon creates plaintiff a creditor, and not a stockholder or member of defendant." Based upon this conclusion a judgment was rendered against appellant for the principal and dividends or interest on the certificate, which judgment authorized the issuance of execution.

The question presented for decision is regarded by both parties as being one of great importance. Much time and care have been expended in the preparation of very able and helpful briefs, in which are cited many cases from various jurisdictions bearing upon the general subject of the status of the holder of a certificate in a building and loan association. A study of these authorities has proved most interesting and helpful, but a consideration of the question of what is the exact point for decision in this record has convinced us that it will be unnecessary to discuss many of these cases. In the early case of United States Building & Loan Association v. Silverman, 85 Pa. 394, it was held that a nonborrower stockholder of a building and loan association ceases to be a member thereof after he has given due notice of withdrawal, and that upon refusal of payment he may sue it and recover judgment as a general creditor, but that, if it should seem equitable to do so, the trial court should restrain execution to allow the association a reasonable time within which to raise the necessary money. That ruling has been followed by a number of courts, and it seems still to be the rule in some jurisdictions, although it has been expressly repudiated by the court announcing it. Stone v. Schiller Building & Loan Ass'n, 302 Pa. 544, 153 A. 758. That ruling has never been the law in Texas, but

it was expressly held by our Supreme Court in Texas Homestead Building & Loan Ass'n, v. Kerr (Tex. Sup.) 13 S. W. 1020, that such a stockholder did not assume the status of general creditor upon giving notice to withdraw, but that his right to a recovery on his certificate must be governed by the provisions of the by-laws of the association. That is now the prevailing doctrine in the several jurisdictions. 9 C. J. § 39, pp. 939, 940; Heinbokel v. National S. L. & B. Ass'n, 58 Minn. 340, 59 N. W. 1050, 25 L. R. A. 215, 49 Am. St. Rep. 519; Fornataro v. Atlantic Coast Bldg. & Loan Ass'n, 163 A. 240, 10 N. J. Misc. 1248; Home Bldg. & Sav. Ass'n v. Clay, 188 Ark. 943, 68 S.W.(2d) 103.

Appellee fully recognizes the fact that the ruling in the Silverman Case is not the law in Texas, and makes no contention that it is. but, on the contrary, expressly admits that. in view of the fact that the appellant does not have in its treasury any funds applicable to the payment of stock withdrawals, it follows, under the decisions of this state, that there could be no basis for a judgment in favor of a participating shareholder for the withdrawal value of his stock. His contention is not that his status changed from that of a stockholder to that of a general creditor, but that he never has been a stockholder. He concedes that as a stockholder he would be bound by the by-laws. and that, as a stockholder, his right to recovery must be determined by the provisions thereof, but denies that he was ever a stockholder. The whole theory of his claimed right to a judgment, as we understand it, is that the certificate above copied was in effect a promissory note, payable 30 days after demand, absolutely and unconditionally. The question for our determination, thus narrowed down, is: What is the certificate first above copied? Is it a promissory note, or is it a certificate of stock? In answering this inquiry we should look to the certificate itself, the by-laws of the association then in force, to which the certificate refers, and the applicable statutes.

The statutes in force at the time appellant was organized and at the time the certificate in suit was issued were those enacted in 1913 (Acts 1913, 1st Called Sess., c. 33), and now embraced in R. S. 1925, as articles 852 to 881. Since that time the Legislature has passed a more comprehensive act governing building and loan associations, but, in determining the question before us, we are not concerned with this later act, for it could not have the effect of changing the contractual relationship theretofore created between

the parties. The obligation of their contract could not be impaired by a statute. Fidelity Building & Loan Ass'n v. Thompson (Tex. Com. App.) 45 S.W.(2d) 167; Id. (Tex. Com. App.) 51 S.W.(2d) 578.

Section 5, of the Act of 1913, now article 856, R. S. 1925, provides: "Said shares shall be deemed personal property, transferable on the books of the association in the manner prescribed in the by-laws, and shall be paid off and retired as the by-laws shall direct."

Article 7, § 1, of appellant's by-laws then in force, was as follows: "Withdrawal Privilege. Any non-borrower shareholder of the association owning any kind of stock therein, wishing to withdraw his or her stock and receive therefor the withdrawal value of said stock as provided in these by-laws, must give the Association thirty days' notice in writing to this effect, which notice shall set forth the stock to be withdrawn by kind and class of stock, number of certificate and number of shares; provided, no earnings shall be credited to such stock after thirty days from application for withdrawal has expired. Such 'withdrawal value' shall be paid over only on the surrender of the passbook and certificate for such stock. The Association will not be bound to pay out on the withdrawal of any stock whatever during any one month, more than one half its net receipts for that month, and stock of all kinds filed for withdrawal shall be paid in the order in which it is filed and notice given and without regard to kind and class of stock, and if the Association is indebted in matured shares, not more than one-third of the receipts of any one month shall be paid out for withdrawals during that month, except on order of the Board of Directors."

If appellee was the owner of "any kind of stock" in the appellant association, he admittedly failed to show any right of recovery under the terms of the statute and by-laws next above quoted.

It is interesting to examine the certificate itself. It is labeled "Full Paid Non-Assessable Investment Stock." It does not certify that the association owes appellee any money, but certifies that appellee is the owner and holder of 10 shares of its capital stock, for each of which he has paid $100 in cash. It then provides that the "holder of this stock" shall not participate in the profits, but shall be paid dividends subject to the by-laws. It next provides that "this certificate may be surrendered for cancellation," or "called in for cancellation," at any time up-on 30 days' notice, and "in accordance to the by-laws of this association." On the back of the certificate it is indorsed, "Certificate for 10 shares Investment Stock." The cancellation receipt printed on the back thereof reads: "Received of Eastland Building and Loan Association of Eastland, Texas, payment in full *of all interest in the assets* of said association by virtue of this stock certificate." (Italics ours.) The provision in the certificate that it might be called in for cancellation by the association is not peculiar to this particular class of stock, for the by-laws, article 7, § 3, grant to the association the right to call in for cancellation and retirement "any outstanding stock of any kind or class." From an examination of this certificate alone, unaided by the by-laws, the conclusion, it seems to us, should be drawn that it is not an unconditional promise to pay $1,000, with interest at 8 per cent., but that it is a certificate evidencing that the appellee is the owner of 10 shares of the capital stock of the appellant association.

The character of this certificate is made more certain when the by-laws are considered. The term "investment stock" appears but one time in the by-laws. Since the certificate refers to the by-laws and makes them a part thereof, reference therein to "investment stock" becomes very enlightening. Article 3, § 1 (f), of the by-laws, reads as follows: "The Board of Directors shall have the power and authority to borrow money on the credit of this Association for the purpose of loaning to members and for other corporate purposes, and may cause to be executed the Association's obligations therefor, and may pledge the property and income of the Association in whole or in part for the payment thereof. The Board of Directors shall also have power and authority to issue, sell, or pledge investment stock for such purposes."

Appellee recognizes the important bearing which this provision has upon the determination of the question presented, but in our opinion he misinterprets the meaning thereof. In discussing it his brief employs this language: "In view of the fact that the term 'investment stock' appears in the by-laws in one place only, to-wit, in the paragraph conferring upon the directors the right to borrow money and to issue 'investment stock' for that purpose, we submit that the label 'Investment Stock' on plaintiff's certificate was very material. The certificate specifically referred to the by-laws. The prospective purchaser of investment stock, upon looking to

the by-laws to see what they provided with respect to that class of so-called stock, would learn that he was to become a creditor of the Association and not a participating member and shareholder therein; or rather, such inspection of the by-laws would but confirm the clear statement to the same effect as contained in the certificate itself."

Does this section provide that the board of directors may issue investment stock for the purpose of borrowing money? To our minds it clearly does not. It provides that, for the purpose of loaning to members and other corporate purposes, the board of directors may borrow money, and may also "issue, sell or pledge investment stock." The phrase "for such purposes" refers back to the phrase "for the purpose of loaning to members and for other corporate purposes." This section clearly provides two methods of raising money to loan to members. The one method is by borrowing and the other by selling or pledging corporate stock. It would be a strange provision that would authorize the board of directors to pledge one note of the association to secure another one. If this certificate is but a promissory note, a pledge of it to secure its own note in a different form would be an idle thing. It is our conclusion that this section of the by-laws, the only one in which the term "investment stock" is used, clearly evidences that a certificate of ownership of such stock is not a mere evidence of an indebtedness created by borrowing.

Building and loan associations are peculiar institutions, and courts have experienced difficulty in classifying them accurately. In some respects they partake of the nature of partnerships, and in others of the nature of corporations. They do not have any fixed capital stock. They deal in their own capital stock, permit withdrawals thereof, and themselves redeem it. They do not hold their capital in trust for the benefit of their creditors in the same manner and to the same extent that ordinary corporations do. Considering the relationship existing between holders of capital stock and the associations, and having in mind their mutual rights and obligations, it is apparent that there are no stockholders in such associations in the sense that there are in other corporations, but, in the sense that the term is used in statutes and by-laws relating to building and loan associations, appellee was a stockholder, in our opinion, and, as such, was bound by the by-laws.

It is our conclusion that the trial court erred in holding that the certificate sued upon created the relationship of debtor and general creditor between appellant and appellee, and that the judgment based upon that holding was erroneous. No reason can be perceived for remanding the cause for a further trial, and it is, therefore, our order that the judgment of the court below be reversed, and that judgment be here rendered that appellee take nothing by his suit.

FUNDERBURK, J., disqualified, and not sitting.